RAFAEL PICÓ ET AL., Petitioners, *v.* DISTRICT COURT OF SAN JUAN, Respondent; CEMENTERIO BUXEDA, INC., Intervener.

No. 38. Argued March 4, 1946.—Decided May 20, 1946.

*Ciro Malatrasi, Jr., Rafael R. Fuertes,* and *Rafael Rodríguez* for petitioners. *F. M. Susoni, Jr.,* and *Pablo Defendini* for intervener, plaintiff in the main action.

MR. JUSTICE CÓRDOVA delivered the opinion of the court.

Cementerio Buxeda, Inc., bought land for a cemetery. It applied to the Commissioner of Health for the required permit for the construction of the cemetery and found that, although the Commissioner had no objection to the project, he refused to grant the permit because the Planning, Urbanizing, and Zoning Board had so requested. The defendant then filed a complaint against the Board and the Commissioner, alleging the above facts and praying for an injunction to restrain the Board from interfering with the Commissioner,

and the Commissioner from giving any intervention to the Board, with respect to the permit sought. The defendants filed a motion to dismiss the complaint for insufficiency, and because the lower court lacked jurisdiction. The lower court denied the motion to dismiss, and its decision is sought to be reviewed by certiorari, under § 671 A of the Code of Civil Procedure of Puerto Rico (Act No. 32 of May 3, 1943, Sess. Laws, p. 84).

■ After the writ had been issued, § 671 A of the Code of Civil Procedure was repealed by the Legislature. The parties were then requested to submit arguments on the effect of that repeal on our jurisdiction, to continue taking cognizance of the proceeding, and both parties agree that our jurisdiction can no longer rest on the repealed Section and may only be exercised if this case is comprised within the ordinary certiorari proceedings authorized by §§ 670 and 671 of the Code of Civil Procedure. The petitioning Board maintains that this is a proper case for review by certiorari, and that we should decide the case on its merits. The intervener Cementerio Buxeda, Inc., without challenging our jurisdiction to proceed with the case, suggests that it is not a proper case for application of the ordinary writ of certiorari and that, therefore, we should discharge the writ and remand the case to the lower court.

The case hinges upon the challenge made by the Board to the jurisdiction of the lower court. The ordinary writ of certiorari lies to determine whether or not the acts of inferior courts are in excess of their jurisdiction. *Bravo* v. *District Court*, 60 P.R.R. 265; *Pujals* v. *District Court*, 40 P.R.R. 400. Hence, we have jurisdiction to continue taking cognizance of the proceeding. And although we would hardly consider this a proper case to issue the writ if it were now sought for the first time, the fact is that it was issued, the parties have submitted extensive arguments, orally as well as in writing, and the only thing lacking is the deci-

sion of this court. In these circumstances, we believe that the interests of the litigants will be best served if we proceed with the case and decide the questions raised.

 The principal question set up by the petitioning Board is that the lower court lacks jurisdiction to entertain the case, since § 26 of Act No. 213 of May 12, 1942 (Laws of 1942, p. 1106), as amended by Act No. 155 of May 14, 1943 (Laws of 1943, p. 488), provides in effect that any person interested in the approval of a subdivision plat which has been rejected by the Puerto Rico Planning, Urbanizing, and Zoning Board may apply to this court for a review of the decision of the Board. As we held in *Picó et al.* v. *District Court*, 65 P.R.R. 834, under § 26 of the cited Act, the jurisdiction of this court to review the decisions of the Planning Board as to subdivisions is exclusive.

The intervener maintains that it is not a sudivision case and that, therefore, § 26 of Act No. 213 is not applicable.

Act No. 213 of 1942, as amended, empowers the Puerto Rico Planning, Urbanizing, and Zoning Board to regulate the "subdivision" and "zoning" of lands in Puerto Rico. "Subdivision" means the division or redivision of a parcel of land in two or more parts for sale or for new building (Section 2). "Zoning" means the determination of the use to which real estate, in particular districts or zones, may be put (Section 9).

Section 24 of Act No. 213, as amended, provides in its pertinent part as follows:

"Section 24.—*Subdivisions.*—From and after the effective date of applicable subdivision regulations provided for under Section 10 hereof, no subdivision of land within Puerto Rico shall be made, and no plat of a subdivision of land in urban areas or for urbanizations shall be received for recording, no buildings shall be erected, no land sold or leased, and no permit issued, except, and to the extent, that the same shall comply with said regulations and shall have been finally approved according thereto by the Board; . . ."

Assuming, without holding, that the provisions of Act No. 213 with respect to *subdivisions* are applicable to cemeteries, it remains to be determined whether there are any regulations issued by the Board to govern such subdivisions. If such regulations exist, it would not be proper, under § 24 of the Act, for the Commissioner of Health to issue the construction permit to the intervener until the Board approves the plats; and the decision of the Board approving or refusing to approve the plats could only be challenged through the proceeding for review provided by § 26 of the Act.

The petitioning board maintains that there are regulations applicable to cemeteries, namely, the Subdivision Regulations promulgated on June 29, 1944. Article 1 of the Regulations provides that "every subdivision of land in Puerto Rico, urban as well as rural, shall be governed by the provisions of these Regulations, . . . " and it defines subdivision as does Act No. 213, as the division or redivision of a lot, tract or parcel of land into two or more parts for sale or for new building, including urban real estate development (*urbanización*). If we take into account only the letter of Article 1, it might be said that the definition of "subdivision" comprises the division of land into burial lots. An examination of the Regulation as a whole, however, convinces us that they are not applicable to cemeteries. Let us see.

The Regulations deal with three classes of "Subdivisions," to wit: the divisions of real properties in the rural area for agricultural purposes (Article 1); the "urbanization" (development) proper, that is, the development of land for purposes of settlement (to which all the sixty Articles of the Regulations are substantially applicable); and "simple" subdivisions (Article 13), that is divisions of land for sale or for building where "the construction of streets and other site improvements" are not required, and wherein it is accordingly unnecessary to submit construction plans

in order to obtain the approval of the Board. It is evident that cemeteries are not included within either the first or the last classification, inasmuch as they are not used for agricultural purposes nor do they dispense with streets, walks and other constructions for which construction plans are advisable, if not essential. Nor are they included, we think, in the classification of "urbanizations," or developments, under the Regulations. Developments, according to § 39 for example, must meet the following requisites: .the grading of land devoted to lots where their lever is lower or considerably higher than the street grade; water supply for every lot; fire hydrants which in no case shall be spaced more than 185 meters apart; and sewage disposal for each lot. Article 17 provides that *the subdivision* of land shall be so made as to provide each lot with access to public street or highway. Article 15 directs when the Board is not to approve a subdivision: when the subdivision creates unsuitable building sites or an unhealthful living environment; when the demand for such division does not warrant its immediate development; and when the intended land use fails to comply with existing zoning ordinances.[1] Articles 16 to 33, inclusive, deal with streets, sidewalks, alleys, cross-walks, easement, curbs, gutters, grades, curves, tangents, and intersections, and Article 34 refers to the size of blocks in all subdivision. Article 37 deals with schools, parks, and playgrounds, and provides that at least five per cent of the total area of *every subdivision* shall be reserved and dedicated for *recreational purposes.* Article 38 provides for the naming and numbering of streets and lots.

We have mentioned some of the Articles of the Regulations which contain provisions peculiarly applicable to the laying out of land used by men to reside in, move about, and work, and peculiarly inapplicable to the laying out of a

---

[1]This last provision is not material to the case at bar, since no zoning ordinance is involved.

158

graveyard. An examination of the Regulations as a whole merely confirms the impression gained from those Articles, that the Regulations are not applicable to the internal distribution of land set apart for cemetery purposes, just as they are not, nor do they purport to be, applicable to the internal distribution of land devoted to hospitals, schools, universities, and other institutions.

Frankly, we do not know nor does the Board tell us, just how it would or could apply the Subdivision Regulations, should a cemetery plat be submitted to it for its approval. The standards and requisites established by the Regulations would not be applicable. The Board would have to fix for the first time, the standards and minimum requisites for a cemetery, standards and requisites applicable to cemeteries in general. In other words, it would have to issue cemetery regulations which do not now exist.

It is not necessary for us to decide whether the Board has power, under Act No. 213 as amended, to regulate the laying out of a cemetery. Nor does the present case, as we have already indicated, involve the zoning power of the Board. We hold only that the Board has not regulated the division of land for cemetery purposes, that is, what might be called the subdivision of such land, if it is indeed subdivision, as that term is defined by Act No. 213.

Since there is no Board Regulation applicable to this case, § 24 of Act No. 213, which prohibits the issuance of any construction permit until, and to the extent that, the Board Regulations are complied with, is inapplicable, as is § 26 of the Act, which provides for the review by this court of the decisions of the Board approving or disapproving subdivision plats, inasmuch as the Board has not decided anything nor are we dealing with a case in which the approval of the plats by the Board is required.

The lower court, therefore, did not err in holding that it had jurisdiction to take cognizance of the case.

 The petitioning Board raises another question in this proceeding, to wit, that the complaint filed by Cementerio Buxeda, Inc., shows that the plaintiff has no capacity to sue, inasmuch as it was organized for the purpose of buying and selling real estate, in violation of the Joint Resolution of the Congress of the United States, dated May 1, 1900. The complaint shows that the plaintiff corporation was organized for the purpose of acquiring, constructing, operating, and maintaining one or more cemeteries in Puerto Rico. The petitioner contends that a cemetery can not be developed or maintained without alienating the land. We do not agree. A church does not alienate its land or any part of its building merely because corpses are buried there. Nor do we believe that when a burial takes place in the National Cemetery at Arlington, for example, it can be said that the government alienates its land. The alienation of land is not therefore essential to the operation of a cemetery, even though it is commonly done. The complaint does not show that the corporation intends to alienate the land. Hence, even assuming, without holding, that the prohibition set forth in the Joint Resolution of May 1, 1900 is applicable to a corporation which is engaged solely in the operation of a cemetery, and which, as an incident to that business, alienates lots for graves, it can not be said that on the face of the complaint it appears that the plaintiff has violated the statute cited, and much less can it be said that it has no capacity to sue.

The writ issued should be discharged and the case remanded to the lower court.

